CULPEPPER, Judge.
Plaintiff purchased a check writing machine from defendant. The purchase agreement contained a “Certificate of Warranty” protecting the purchaser and his bank against losses due to forgeries or alterations. This is a suit under the warranty for losses due to forged checks. From an adverse judgment, defendant appealed.
The principal issues concern certain terms and conditions contained in the “Certificate of Warranty” as follows:
“This Certificate of Warranty is subject to the following terms and conditions:
“(1) It applies only to forgeries or alterations discovered and reported to The Paymaster Corporation as hereinafter provided within 60 days from the date of payment by the bank of the altered or forged instrument.
* * * * * *
“(7) Where the same wrong-doer makes a forgery or alteration on more than one item, Paymaster’s liability shall be limited to those forged or altered items actually paid by the Purchaser’s drawee bank during the period not exceeding 14 calendar days after a forged or altered item by said wrong-doer and bank statement was made available to the Purchaser, provided that Paymaster’s liability in no event shall exceed $12,500.00 in the aggregate and that any forgeries or alterations for which Paymaster is liable are discovered and reported as provided at paragraph (1) above.”
The general facts are that the plaintiff, Douglas Lee, owns and operates a business known as “Lee’s Radio & TV”, with stores in Natchitoches and Winnfield, Louisiana. His wife, Dorothy M. Lee, keeps the books and writes the checks. The business has checking accounts in Peoples Bank & Trust Company in Natchitoches and in Bank of Winnfield & Trust Company in Winnfield.
On April 20, 1971, plaintiff purchased the check writing machine from defendant. The warranty period extended from the date of purchase to April 20, 1973. During the period beginning May 8, 1971 and continuing through September 8, 1971, a total of 20 checks, bearing the forged signature of plaintiff’s wife, were drawn on the account in Peoples Bank & Trust Company of Natchitoches and were paid by the bank and charged against plaintiff’s account. Additionally, in July and August of 1971, four checks were drawn on plaintiff’s business account in Bank of Winnfield & Trust Company, bearing the same forgery. Most of the checks were drawn payable to one James Apponey, one of plaintiff’s employees.
These forgeries were first discovered by plaintiff on September 14, 1971. On that date he went to the Winnfield Bank to investigate an overdraft notice. Further investigation revealed the forged checks in both the Winnfield and the Natchitoches banks. On September 16, 1971, plaintiff’s wife gave written notice to the defendant of the forgeries and made a claim under the Certificate of Warranty.
Plaintiff’s explanation for the delay in discovery of the forgeries is that when they received their bank statements about *841 the first of each month the envelopes had been opened and the forged checks removed, leaving only the statements and other checks which had actually been signed by Mrs. Lee. There is no evidence to contradict the testimony that the employee who committed the forgeries had intercepted the bank statements and removed the forged checks. Mrs. Lee did not reconcile the checkbook with the bank statement, and hence the forgeries were not discovered until the overdraft.
The first issue is whether the liability of defendant under the Certificate of Warranty is limited by the provisions of sub-paragraph (1), which states: “It applies only to forgeries or alterations discovered and reported to The Paymaster Corporation as hereinafter provided within sixty days from the date of payment by the bank of the altered or forged instrument.” (Emphasis supplied) This language is clear and unambiguous. The first report of the forgeries to The Paymaster Corporation was on September 16, 1971. Hence, the warranty covers only those forged checks which were paid by the bank within 60 days prior to that date, i. e., those paid after July IS, 1971. It does not cover those paid before July 15, 1971.
Of the checks sued on, the following drawn on the Peoples Bank & Trust Company were paid by that bank before July 15, 1971:
DATE OF CHECK AMOUNT DATE PAID BY BANK
5/ 8/71 $141.12 5/11/71
6/25/71 92.11 6/28/71
7/ 2/71 110.10 7/ 7/71
8/ 3/71 214.40 7/ 8/71
7/ 6/71 98.20 7/ 9/71
7/ 8/71 131.10 7/12/71
The six checks listed above, which are excluded under subparagraph 1 of the Certificate of Warranty, total $787.03. The judgment must be reduced by this amount.
There is a question about the check dated June 5, 1971 in the sum of $229.21. The photostat copy of this check does not show the date it was paid by the bank, and we are unable to find this check on the copies of the bank’s statements. Nevertheless, defendant concedes this check was paid by the bank, and in order to avoid liability thereon defendant had the burden to show the date of payment. Since defendant has failed to show the date this check was paid by the bank preceded the 60-day period prior to notice under subparagraph (1), we will allow plaintiff to recover on this item.
Plaintiff argues that subparagraph (1) has no application in this situation where the person committing the forgeries intercepted his bank statements, and removed the forged checks, thus affording plaintiff no opportunity to earlier discover the loss. Subparagraph (1) contains no language which would extend the 60-day period in the case of forgeries not discovered. The language is clear and the warranty applies only to those forgeries which are “discovered and reported” to defendant within 60 days from the date of payment by the bank.
The next issue is the construction of subparagraph (7) quoted above. This subparagraph provides that where the same ■ wrong-doer commits a number of forgeries, defendant’s liability is limited to those paid by the bank “during the period not exceeding 14 calendar days after a forged or altered item by said wrong-doer and bank statement was made available to the purchaser.” Under these provisions, the 14-day limitation does not commence until the plaintiff-purchaser receives both a bank statement and a forged check. The evidence shows that plaintiff did not receive any of the forged checks sued on, since they were intercepted by the wrongdoer. Therefore, subparagraph (7) has no application.
Defendant argues that under subpara-graph (7) the forged checks were “made available” to the plaintiff since the bank *842 statements with the checks enclosed were mailed to plaintiffs place of business and came into the possession of his employee. We do not think subparagraph (7) should be given this construction. One of the primary purposes of the Certificate of Warranty is to protect against forgeries by employees. To say that making the forged instruments available to the employee is equivalent to making them available to the plaintiff, would frustrate one of the primary purposes of the agreement.
The defendant makes a final argument under a provision of the Certificate of Warranty which states “This Certificate shall not protect the purchaser’s bank unless due diligence shall have been used by the purchaser’s bank in inspecting such checks or drafts or warrants before payment.” (Emphasis supplied) A mere reading of the clause shows it excludes only protection of the bank and not the purchaser. Regardless of whether due diligence was used by the bank in examining the checks to detect a forgery, the plaintiff is covered.
This suit was originally filed by the plaintiff against The Paymaster Corporation. Defendant answered and filed third party demands against the Peoples Bank & Trust Company and the Bank of Winnfield & Trust Company. However, at the outset of the trial counsel for defendant severed these incidental demands, reserving the right to pursue them at a later date, and this case was tried only against the defendant, The Paymaster Corporation. During the trial it was stipulated that Peoples Bank & Trust Company had refunded to plaintiff the sum of $1,499.80, representing the total of certain checks which were sued on but were not written on the check writing machine. It was stipulated that plaintiff has no claim for these checks refunded by the bank.
The judgment appealed is for the sum of $3,017. For the reasons stated above, we find that the judgment must be reduced by the sum of $787.03, representing the total of the six checks excluded from the Certificate of Warranty under subparagraph (1).
For the reasons assigned, the judgment appealed is reduced from $3,017 to the sum of $2,229.97. Otherwise, the judgment is affirmed. All costs of this appeal are assessed against the defendant appellant.
Affirmed, as amended.